**Elifonso ESQUIVEL, Jr.,
et al., Plaintiffs,**

**v.**

**SOUTHWESTERN BELL MOBILE
SYSTEMS, INC., Defendant.**

**Civil Action No. M–95–99.**

United States District Court,
S.D. Texas,
McAllen Division.

Jan. 30, 1996.

John A. Pope, III, Rio Grande City, TX, Timothy Joseph Crowley, Crowley Marks & Douglas, Houston, TX, Frank R. Nye, Jr., Rio Grande City, TX, Arnulfo Guerra, Edinburg, TX, Richard Eugene Norman, Houston, TX, Sam F. Baxter, McKool Smith, Marshall, TX, for Elifonso Esquivel, Jr., Hugo Canales, Isidro Delgado.

Jorge C. Rangel, Rangel & Chriss, Corpus Christi, TX, Baldemar Garza, Garza & Montalvo, Rio Grande City, TX, Carol L. Tacker, S.W. Bell Tel. Co., Legal Counsel, Dallas, TX, G. Luke Ashley, Thompson & Knight, Dallas, TX, Michael E. Schonberg, Thompson & Knight, Dallas, TX, Wayne Watts, S.W. Bell Tel. Co., Legal Counsel, Dallas, TX, for Southwestern Bell Mobile Systems, Inc.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is Plaintiffs' motion to remand. This case was filed as a class action in the 229th Judicial District Court of Starr County, Texas on behalf of all residents of the United States who have contracted with the Defendant for cellular telephone services. Their claim is based upon Defendant's written service agreements which provide, among other things, that if the customer terminates service before the expiration of the agreed term, liquidated damages in the amount of $200.00 are to be paid to Defendant. Plaintiff contends that this sum is not a reasonable estimate of actual damages that result from terminating the agreement; therefore, they contend, the provision is punitive and invalid under Texas common law.

Defendant removed to federal court claiming subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. Specifically, they categorize Plaintiffs' case as one which "directly challenges the validity of charges imposed pursuant to a federal tariff," thereby arising under federal law.

"It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). Defendant concedes that Plaintiffs' state court petition "does not contain the requisite allegations establishing federal question jurisdiction." Def.'s Response to Plf.s' Motion to Remand at 4.

Defendant asserts nevertheless that the Federal Communications Act preempts all state laws regulating rates charged by any commercial mobile service. 47 U.S.C. § 332(c)(3)(A) (Supp.1995). It then maintains, but Plaintiffs dispute, that the liquidated damages provision in the agreement is part of the "rates charged by" Defendant. Federal preemption itself, however, is ordinarily only a defense to a plaintiff's case. "As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." *Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546. A narrow exception to the general rule exists when Congress has so completely preempted an area that any civil complaint "raising this select group of claims is necessarily federal in character." *Id.*

Defendant cites several cases following *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.*, 391 F.2d 486 (2d Cir.1968), to the effect that "federal common law" authorizes parties to sue in federal court in various circumstances involving contractual disputes over rates. It is not clear that those cases represent the view of the Fifth Circuit. *Compare MCI Telecommunications Corp. v. Credit Builders of America*, 980 F.2d 1021 (5th Cir.), *vacated on other grounds and remanded*, 508 U.S. 957, 113 S.Ct. 2925, 124 L.Ed.2d 676, *reinstated*, 2 F.3d 103 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 472, 126 L.Ed.2d 424 (1993) *with MCI Telecommunications Corp. v. United Showcase, Inc.*, 847 F.Supp. 510 (N.D.Tex.1994). Nevertheless, Defendant furnishes no direct authority for the proposition that a case filed in state court alleging rights only under state law can be removed under the Communications Act. At least one district court has

squarely found such cases to be non-removable. *Financial Planning Institute, Inc. v. American Telephone & Telegraph Co.*, 788 F.Supp. 75 (D.Mass.1992). That decision was based on the teachings of *Metropolitan Life Ins. Co. v. Taylor, supra.*

The *Taylor* opinion observed that without "explicit direction from Congress" the question of so-called "complete preemption" would be a close one even with ERISA. *Taylor,* 481 U.S. at 64–66, 107 S.Ct. at 1547. Labeling complete preemption as "extraordinary," the Supreme Court nevertheless found that power in ERISA because its civil enforcement provisions closely paralleled that of the LMRA and because the congressional history of ERISA stated: "All such actions in Federal or State courts are to be regarded as arising under the laws of the United States in similar fashion to those brought under section 301 of the Labor–Management Relations Act of 1947." *Id.* Justice Brennan wrote a concurring opinion to stress that the *Taylor* holding was "a narrow one." *Id.* at 67, 107 S.Ct. at 1548. He cautioned against adoption of a broad rule "that *any* defense premised on congressional intent to preempt state law is sufficient to establish removal jurisdiction." *Id.* Instead, removal jurisdiction would exist only when Congress has clearly manifested an intent to make causes of action removable to federal court. *Id.* Justice Brennan concluded with the advice that, in the future, "the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." *Id.*

The Fifth Circuit followed Justice Brennan's advice in *Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir.1989), in an opinion which lucidly traces the history of the "complete preemption" rule and distinguishes it from federal preemption in general. In the process of that discussion, the Fifth Circuit recalled its opinion in *Beers v. North American Van Lines, Inc.*, 836 F.2d 910 (5th Cir.1988), holding that the Carmack Amendment to the Interstate Commerce Act might preempt a plaintiff's claim in the sense of being "dispositive of the dispute" but does not create federal-question jurisdiction sufficient to justify removal from state court. *Id.* at 913. *Beers* is instructive since the Defendant in the instant case sees analogies between the Interstate Commerce Act and the Communications Act.

Defendant cites to no clear manifest congressional intent to make causes of action under the Communications Act removable to federal court in the same manner as those filed under the LMRA or ERISA. At most, Defendant shows an intent that no state government shall have the authority to regulate rates charged by any commercial mobile service. This preemptive factor can be asserted as a defense in state court similar to preemption under the Carmack Amendment and many other federal statutes. Moreover, the specific preemption provision excepts any prohibition of a state from regulating "the other terms and conditions of commercial mobile services." The Court is persuaded that the liquidated damage provision here is a "term and condition" of the agreement rather than a rate. Defendant's Tariff Rate Plan contains no reference to the amount of liquidated damages sought to be imposed in the event of early cancellation. The Tariff consists of 51 pages of detailed price structures for air time rates and service charges but contains only two generic references to a termination charge. The actual language calling for liquidated damages is located in a section of the agreement styled "Terms and Conditions."

Defendant argues that it incurs certain fixed acquisition costs each time it adds a customer to its network and must recover those costs through the total price charged for the service. To allow customers the opportunity to avoid payment of these costs "up front," Defendant allows the cost to be spread over the life of the agreement. The liquidated damages provision is needed, according to Defendant, to enforce this arrangement.[1] On the other hand, 47 U.S.C. § 332(c)(3)(A) specifically declines to prohibit

---

1. If that is true, one wonders why the solution would not be merely to require the first-time customer to pay the monthly fee for the remaining months of the agreement in the event of early cancellation. One also wonders why a customer who has been a party to the agreement for several years would not have already paid the "acqui-

the states from regulating terms and conditions. The congressional history [2] indicates that the phrase "terms and conditions" was meant to include such matters as customer billing information and practices and billing disputes, "and other consumer protection matters." Plaintiffs' suit is invoking the common law of Texas designed to protect consumers from excessive liquidated damages provisions that are tantamount to penalties. Nothing in the Tariff filed by Defendant indicates that the FCC has ever passed upon the amount of liquidated damages specified in Defendant's agreements. Also militating against complete preemption is the "savings clause" of the Communications Act, 47 U.S.C. § 414, which states: "Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

Under all the foregoing circumstances, it is not even clear that Plaintiffs' case is preempted. Even if preemption applies, it is patently not clear that Defendant can invoke the extraordinary doctrine of "complete preemption" such as is attributable to the LMRA or ERISA. Accordingly, this case was not removable and Plaintiffs' motion to remand is GRANTED.

sition costs." Those questions can presumably be answered at the trial on the merits.

2. H.R.Rep. No. 111, 103rd Cong., 1st Sess., sec. 5205, at p. 260 (1993), *reprinted in* 1993 U.S.C.C.A.N. 588.